UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22 CR 115 SNLJ (ACL) |
| | ) |
| GEOFFREY P. SHAFFAR, | ) |
| | ) |
| Defendant. | ) |

## AMENDED REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned is Defendant Geoffrey P. Shaffar's Motion to Suppress Physical Evidence (Doc. 33) obtained following his arrest on May 11, 2022.

Shaffar argues that his constitutional rights were violated when an officer searched the interior of his truck after he was arrested for burglary second degree and stealing. Methamphetamine, marijuana, and digital scales were discovered in a bag within Shaffar's truck after he was transported to the jail.  Shaffar claims the search of the interior of his truck was unlawful because he was "not within reaching distance of the passenger compartment" and the investigating officer "did not have a reasonable belief that the vehicle contained evidence of the offense of arrest, burglary." (Doc. 33 at 4.)  He further argues that the attenuation and inevitable discovery doctrines do not apply because the officer's search was "a fishing expedition to find anything that might be considered criminal conduct." *Id*. at 8.

The Government opposes (Doc. 36) Shaffar's suppression motion based on application of the automobile exception to the warrant requirement.  The Government also

argues the search of the truck's interior was a valid search incident to arrest. Finally, the Government argues that the drug evidence would have been inevitably discovered pursuant an inventory search since the truck had to be towed away from the property.

In consideration of the pleadings and evidence submitted by the parties along with the testimony of the arresting officer, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the Defendant's Motion to Suppress Evidence be denied.

## I. Findings of Fact

On May 11, 2022, around 5:30 a.m., Officer Christopher Newton of the Scott County Sheriff's Department (SCSD) responded to a dispatch regarding a burglary in progress at what was formerly known as Red's Salvage Yard.  Upon his arrival, Officer Newton observed a black F250 pickup truck parked parallel to the roadway with a single occupant in the driver's seat.  That person was Defendant Geoffrey P. Shaffar.  Officer Newton approached Shaffar who acted nervous and repeatedly stated that he wanted to go home. Officer Newton activated his body camera[1] as he encountered Shaffar.

The owner of the salvage yard arrived shortly thereafter.  The owner showed Officer Newton still photographs of the burglary that were on his cell phone.[2]  The photographs were taken by two game cameras the owner installed on the property.  The still images reflected that the burglary began around 5:04 a.m.  The images showed that someone had crawled

---

[1]  A copy of the body camera video was submitted as Government Exhibit #15, hereinafter "G.E. #15."
[2]  The Government did not offer all the still images created by the game cameras into evidence.

through a window of a shop building.  While Officer Newton and the owner were reviewing the photos on the owner's phone, the owner commented that there were two people involved in the burglary.  After examining some of the images on the owner's phone, Officer Newton incorrectly concluded that the Defendant was the only person involved. *See* Government Exhibit #15 at timestamp 07:35-08:00.

Next, Officer Newton asked the owner whether any of the items in Shaffar's truck bed and trailer belonged to him.  While the owner was looking at the contents of the truck bed and trailer, Shaffar denied taking anything.  When the owner identified several items that belonged to him, Shaffar was arrested for burglary and stealing.  He was placed in the patrol car within three minutes of the owner arriving on the scene.  Four minutes after being placed in the patrol car, another deputy arrived and transported Shaffar to the jail.

Officer Newton had been a law enforcement officer for more than a decade when he was called to investigate the burglary.  He estimated that he had previously investigated several hundred burglaries and knew that burglars often use flashlights, gloves, bolt cutters, crowbars, and screwdrivers. At least two of the still photos from the owner's game cameras reflect that gloves and lights were used to commit the burglary.  *See* G.E.s #4 and #5.

Shaffar told Officer Newton that he had pulled to the side of the road because his engine had overheated.  He repeatedly denied being involved in the burglary even though still photos from the game cameras showed him on the property. *See* G.E.s #3, #4, and #6. Additionally, upon Officer Newton's arrival, Shaffar "appeared nervous and continuously advised he just want[ed] to go home." (Tr. 13.)  Dispatch reported that Shaffar was on probation for two counts of stealing.

After Shaffar was taken from the scene, the owner showed Officer Newton around the property and identified damage to the property, including the broken window and multiple locks that had been cut. Some of the damage was the result of prior burglaries. One of the buildings had a door that was marked "Office." A window had apparently been removed at the back of the building and the entry door was ajar. *See* G.E. #15 at timestamp 16:50. Although in disarray, the building contained many items of value of varying sizes.

As they were returning to the roadway where Shaffar's truck was parked, the owner asked whether Shaffar's vehicle would be towed. Officer Newton interpreted the inquiry to be a request for the vehicle to be removed. He responded, "yeah, we'll tow the truck." *Id*. at 21:07. Officer Newton communicated with the dispatcher and requested that a tow company be called. *Id*. at 26:00.

At that point, Officer Newton took photographs of the interior of the truck from the driver's side door. *Id*. at 26:20-26:42. He then directed the owner and the owner's son to remove any items that belonged to them. They were instructed to place the items behind the trailer. *Id*. at 27:10. Officer Newton opened the rear door of the truck cab and examined some of the items on the driver's side. *Id*. at 28:05.

Officer Newton returned to his patrol car for a moment. When he returned to the truck, the owner's son had picked up a "dab pen" that he observed in plain view on the truck's center console. Next, the son opened the rear door of the truck. Officer Newton instructed the son, "don't go through anything inside the truck. . .just look in the back…see if there's anything back there." *Id*. at 29:37. Then, Officer Newton searched the front seats of the truck.

During the evidentiary hearing, Officer Newton explained that when he searched the truck cab, he was looking for "evidence of the crime of burglary" (Hearing Transcript, Doc. 40, referred to herein as Tr. 21), that being "any items or tools used to commit burglaries and any stolen items that were taken during the burglary" (Tr. 18).  In Officer Newton's experience, burglars "typically steal anything of value, whether large or small," with smaller items including things like "cash, coins, electronics, anything of value."  (Tr. 19.)

When Officer Newton searched the front row of Shaffar's truck cab, he located a flashlight, black mechanic's gloves, and landscape/solar light on the right side of the driver's seat where Shaffar had been seated.  Inspection of the area around the truck's console from the passenger side resulted in the discovery of a small red bag with zippers.  G.E. #15 at timestamp 31:30-32:40.  The red bag contained 87 grams of methamphetamine, a glass jar containing 11 grams of marijuana, and digital scales.  The owner and the son indicated the red bag and contents did not belong to them.  *Id*. at 33:42.

Earlier, the owner had identified a suitcase found in the truck bed as belonging to him.  The suitcase contained car parts of varying sizes, a squeegee, and an electronic throttle body.  *See* G.E. #10.  From the trailer, the owner identified the three containers of hyrdraulic fluid, a propane burner, propane tank, and stove that belonged to him.

After placing the stolen items from the truck bed and trailer behind the trailer, Officer Newton photographed them and inquired about the value of each of the items.  *See* G.E. #15 at timestamp 35:20-39:47. Officer Newton and the owner walked to the back door of the truck cab and Officer Newton asked "any of this stuff look like your's?"  *Id*. 40:05-40:12.  Officer Newton testified:

The property had a lot of items on it.  This was a salvage yard.  So there were

multiple tools, multiple car parts. It would be difficult to know if something
was missing just by walking through the property and looking around.

(Tr. 65.) No more items were identified as having been stolen.

The men examined the trailer to see if a vehicle identification number could be located to see if it was stolen. It appeared the VIN had been scratched off. Officer Newton conducted a further search of the interior of the truck cab and the body camera video stopped.[3]

Officer Newton testified that while waiting for the tow truck to arrive, a second individual was located on the property. That person, Tyler Hinton, was found hiding under a truck. Officer Newton explained that approximately an hour after he arrived, the owner waved him over and "was pointing under the truck." (Tr. 68.) Adding, "when I looked under the truck, I observed [Hinton] laying under the truck with a black mask laying next to him." *Id*. Hinton claimed he was taking a nap. Hinton had a solar landscaping light in his pocket that matched the one found in Shaffar's truck cab. Still photos from the game cameras confirmed Hinton's presence in the "Office" building. That conclusion was based on Hinton having a tattoo on his arm that matched the tattoo on one of the subjects in the game camera still photos. Hinton was arrested for burglary and stealing, and then transported to the jail.

Officer Newton further testified that Shaffar's truck was parked in a manner that would obstruct the view of any vehicle attempting to exit the property. There was also no

---

[3] The total running time of the body camera video was 54 minutes and 36 seconds.

Page **6** of **14**

one available to move the vehicle as both Shaffar and Hinton were in jail. Additionally, the victim of the burglary owned the property, and he wanted the vehicle to be removed.

The SCSD has a "Standard Operating Procedure for Removal and Inventory of Vehicles." *See* G.E. #17. The Procedure was "established in an attempt to safeguard persons, property, and evidence through the proper removal and inventory of vehicles, while limiting the time spent by deputies conducting unnecessary administrative duties, and to mitigate punitive action taken against the public when not necessary." *Id*. at ¶ 4.1. The Procedure includes instructions for hazardous situations and what to do with vehicles when the driver is arrested. The sections addressing those scenarios follow:

> **7. HAZARDOUS SITUATIONS**
>
> 7.1 Deputies will take the necessary action to remove a vehicle, trailer,. . .etc. from a highway, other publicly maintained road, the right-of-way, or adjacent property if a real or imminent danger or hazard is present, or the flow of traffic is obstructed.
>
> 7.2 Deputies will consider the nature of the hazard or obstruction, volume of traffic, need for protection of the item or its contents, probability of injury or damage during removal, legality of the location of the item, and whether the owner, driver, or affected person is present.
>
> **15. SAFEKEEPING / PUBLIC SAFETY**
>
> 15.3 Deputies will take necessary action to remove a vehicle, trailer,. . ., etc. when the operator is under custodial arrest, and a competent, licensed operator is not reasonabl[y] available to remove the property at the request of the driver or owner, or the person arrested is unable to arrange timely removal, and the property cannot be safely left roadside.
>
> **17. PROCESSING**
>
> 17.1 The search for fingerprints or other evidence, and the removal and inventory of property will be conducted in accordance with laws and applicable court rulings.
>
> **19. TOWING SERVICE SELECTION**

19.1  In situations where the Deputy is having property towed due to arrest or for evidence, the Deputy will determine the appropriate company to request based on an approved list of service providers.

**21.  INVENTORY**

21.1  Deputies having a vehicle, trailer,. . .etc. towed will inventory and record the contents.

21.2  The inventory will include the contents of all compartments and containers in the vehicle, trailer,. . .etc., including those that are locked.  Locked compartments will be opened as carefully as practicable to avoid unnecessary damage.

**23.  DOCUMENTATION**

23.1  Deputies will complete a Missouri State Highway Patrol tow sheet with each vehicle being towed.  The original copy will be kept with the report.  A copy will be given to the tow company driver.  The third copy will be given to the Patrol Commander or Office Administrator responsible for towed vehicles.

Officer Newton requested a tow truck for Shaffar's truck after the owner questioned whether it would be towed.  That decision was made before a search of the interior of the truck was conducted.  The decision to call a tow truck was consistent with the SCSD written procedures.  Officer Newton failed to complete the tow sheet on the proper form which was not in compliance with the SCSD procedures.  That said, Officer Newton documented much of what was contained within the truck and trailer when he took photographs of the interior of the vehicle, as well as the truck bed and trailer.  Video from his body camera provided further documentation of the items although an incomplete inventory.

Shaffar requests suppression of the controlled substance seized from the cab of his truck. (Doc. 33 at 1.)

Page **8** of **14**

## II. Conclusions of Law

Shaffar does not claim that his arrest for burglary and stealing was unlawful. He argues that Officer Newton's seizure of the drug trafficking evidence found in the red bag was in violation of the Fourth Amendment. Shaffar first claims that Officer Newton "did not have a reasonable belief that [his] truck contained evidence of a burglary; the offense he was being arrested for." *Id*. at 3. He also argues that the inevitable discovery and attenuation doctrines do not apply.

Generally, searches conducted without prior approval from a judge are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Another "such exception is the so-called 'automobile exception,' which authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004).

### II.A.   Search Incident to Arrest Exception

*Gant* confined the "search incident to arrest exception" to two situations. First, "[p]olice may search a vehicle incident to a recent occupant's arrest only when the arrestee is within reaching distance of the passenger compartment at the time of the search…" *Gant*, 556 U.S. at 351. Additionally, *Gant* provided "that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment). As recited

by the Eighth Circuit in *United States v. Davis*, "police may validly search an automobile incident to an 'arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest.'"  569 F.3d 813, 817 (8th Cir. 2009) (quoting *Gant*, 556 U.S. at 351 (emphasis added in *Davis*).

Officer Newton's search of Shaffar's truck was lawful.  Shaffar was arrested while he was at the location of a burglary in progress.  Items stolen from the property were observed in plain view in Shaffar's truck bed and the attached trailer.  Shaffar lied about his involvement in the burglary and lied about why he was parked on the side of the roadway—it was not because his truck overheated.  His truck had been parked at that location for more than a half hour and he participated in a burglary of the property.  Officer Newton's search for items related to the crimes of burglary and stealing within the interior of the truck's cab was permitted under the search incident to arrest exception to the warrant requirement.

Shaffar suggests that Officer Newton could not have been searching the truck cab for stolen items because the owner was unable to list all the items that had been stolen.  He does not offer any authority for a requirement that such an itemized list is necessary for a search to be conducted.  Officer Newton was not constrained to searching for items that may have been stolen.  He first instructed the owner and his son to inspect the truck bed and trailer for items that may have been stolen, and later asked them if anything in the cab belonged to them.  That said, the circumstances also warranted a search for tools associated with burglary.

In addition, Shaffar challenges Officer Newton's credibility regarding why he examined the contents of the red bag, claiming it could not possibly have contained an item

Page **10** of 14

associated with the burglary. This argument ignores the fact there were additional items associated with the burglary that could have been stored in that bag such as a mask, an additional pair of gloves or light, as well as items of value stolen from the property. Officer Newton's objective of searching for items related to the burglary is bolstered by the question he asked the owner after completing his search of the interior of the truck's cab. He specifically asked the owner if anything in the rear seat belonged to him. *See* G.E. #15 at timestamp 40:05-40:12. That query was made less than nine minutes after Officer Newton discovered the items in the red bag. *See Id*. at 31:36. It was also before a full inspection of the trailer was initiated to determine if it was stolen. This Court credits Officer Newton's testimony that his search of the truck cab's interior was for items associated with the crime of burglary whether tools of the trade or stolen property.

### II.B.   Automobile Exception

Police may search an automobile or other vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Carroll v. United States*, 267 U.S. 132, 162 (1925). The Supreme Court "has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *United States v. Chadwick*, 433 U.S. 1, 12 (1977). This distinction is based upon the mobility of automobiles and a diminished expectation of privacy associated with the automobile. *United States v. Alden*, 576 F.2d 772, 775 (8th Cir. 1978).

The automobile exception also applies to parked cars, even where the officers are aware that they are unlikely to be driven away, because "[i]t is the characteristic mobility of

all automobiles, not the relative mobility of the car in a given case, that gives rise to the *Ross* standard which allows for warrantless searches when probable cause exists." *United States v. Perry*, 925 F.2d 1077, 1080-81 & n. 4 (8th Cir. 1991) (applying the exception where the vehicle was parked in a school parking lot and the occupants were unlikely to drive it away because they had already been arrested at the time the search was conducted)).

The Supreme Court set the parameters for an automobile search in *United States v. Ross*,

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in a trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

456 U.S. 798, 824 (1982). Ultimately, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825.

In *California v. Acevedo*, the Supreme Court explained:

> The line between probable cause to search a vehicle and probable cause to search a package in that vehicle is not always clear, and separate rules that govern the two objects to be searched may enable the police to broaden their power to make warrantless searches and disserve privacy interests. We noted this in *Ross* in the context of a search of an entire vehicle. Recognizing that under *Carroll,* the "entire vehicle itself ... could be searched without a warrant," we concluded that "prohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests." 456 U.S., at 821, n. 28. At the moment when officers stop an automobile, it may be less than clear whether they

Page **12** of **14**

suspect with a high degree of certainty that the vehicle contains drugs in a bag or simply contains drugs. If the police know that they may open a bag only if they are actually searching the entire car, they may search more extensively than they otherwise would in order to establish the general probable cause required by *Ross*. 500 U.S. 565, 574-75 (1991). *Acevedo* confirmed "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id*. at 580.

Shaffar's arguments supporting suppression of the drug evidence is based on his theory that Officer Newton could not possibly have believed the red bag contained evidence of the burglary. As set out in the previous section, the record supports Officer Newton's search was aimed at recovering items used to commit burglary, or additional stolen items. A search for those items was permitted under the automobile exception to the warrant requirement.

## II.C.   Inevitable Discovery

The Government's final argument is that the contents of the red bag should not be suppressed because it would have been inevitably discovered during an inventory search. (Doc. 44 at 8-11.) The Court declines to reach this argument, in light of its findings that the search of the truck cab was valid pursuant to the automobile and search incident to arrest exceptions to the warrant requirement.

In consideration of the foregoing analysis, Shaffar's request for suppression of the drug evidence should be denied.

## III.   Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Physical Evidence (Doc. 33) be **denied**.

Further, the parties are advised that they have until not later than July 19, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of July, 2023.